IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TREVOR JAMES FULK and SAM FOGLER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CIVIL NO. 08-843-GPM |
| THE VILLAGE OF SANDOVAL, ILLINOIS, JEROME RATTERMANN, Individually and in his Official Capacity as Mayor of the Village of Sandoval and President of the Village of Sandoval Board, MARK COPPLE, GERALD FANGER, CORA OEHMKE, BILL THOMPSON, and RAY RESCH, Individually, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

On Monday, October 5, 2009, the Court heard arguments on Defendants' motion to dismiss the second amended complaint. For the reasons that follow, Defendants' motion is denied**.**

## **Background**

The background information in this case was outlined in this Court's earlier Memorandum and Order (*see* Doc. 28). Plaintiffs were given leave to amend their first amended complaint and, in light of recent changes in federal pleading standards, were directed to "allege plausible facts that they made [the] statements [at issue] as private citizens, not pursuant to their official duties" (Doc 28, p. 4).

Defendants then moved to dismiss the action on the grounds that plaintiffs have not alleged any plausible facts to show that their conduct was done as private citizens, and "therefore do not have any claim that their First Amendment rights were violated" (*see* Doc. 32, p. 2) or, in the alternative, that "all of the individual defendants would be entitled to qualified immunity" because their alleged conduct did not violate "clearly-established statutory or constitutional rights of which a reasonable person should have known" (Doc. 32, pp. 2-3, *citing Eversole v. Steele,* 59 F.3d 710 (7th Cir. 1995)). The Court will take each of Defendants' arguments in turn.

## Analysis

The Court's prior Order should have made it abundantly clear that it was Plaintiffs' burden to plead sufficient factual matter to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 129 S. Ct.1937, 1949 (2009), *citing Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 556 (2007). Under *Iqbal*, "a claim has facial plausibility when the *plaintiff* pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Id.*, *citing Twombly*, 550 U.S. at 556 (emphasis added). Thus, in order to survive this motion to dismiss, Plaintiffs must have pled sufficient facts that, accepted as true, plausibly demonstrate that they were acting outside of their official duties, as citizens and not as public employees, when they made their relevant reports. *See Iqbal*, 129 S. Ct. at 1949. Plaintiffs, however, suggest that it was Defendants' burden to "establish what exactly were the plaintiffs' official duties" (*see* Doc 36, p.2). This is incorrect. Further, as was stated previously, "the bare allegation that [Plaintiffs] made [their] statements as private citizens is not sufficient to move this allegation from 'conceivable to 'plausible' under the [*Iqbal*] standard" (Doc 28, p. 4).

Nevertheless, in their second amended complaint, Plaintiffs make some of the same "bare allegations" (*see e.g.* Doc. 29, ¶ 6, "plaintiff Fulk as a private citizen reported serious misconduct"), and then simply add that "the matters discussed with the State's Attorney's Office and the Sheriff's Office occurred 'off the clock' and at a time when plaintiff[s were] out of uniform." Whether Plaintiffs were in uniform or "off the clock" is not the most relevant inquiry because of its limited value in helping determine whether Plaintiffs were acting pursuant to their official duties. At bottom, however, Plaintiffs' factual allegations, while sparse, are nonetheless sufficient and allow this Court to draw the reasonable inference that Defendants may be liable for the misconduct alleged. Plaintiffs' Second Amended Complaint, therefore, just barely clears the pleading threshold as set (and raised) by the Supreme Court in *Iqbal*.

As this Court previously stated, "to prevail on a Section 1983 claim for violation of First Amendment Rights under *Garcetti* a plaintiff must show that his speech was not pursuant to his official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *see* Doc. 28, p. 3. Thus, the touchstone inquiry here is which actions of Plaintiffs, if any, fell outside of their official duties when they allegedly reported mayoral misconduct "to the Marion County State's Attorney's office, to certain members of the Village Board, to the Marion County Sheriff's office, and to the Illinois State Police" (*see* Doc. 29, ¶ 6).[1]

---

[1] There is a small, but potentially fatal, discrepancy between Plaintiff's first and second amended complaints. Specifically, the first amended complaint alleges that <u>only Plaintiff Fogler</u> reported the alleged misconduct to the Village Board of Sandoval. Oddly, the second amended complaint alleges that <u>only Plaintiff Fulk</u> made such a report. This inconsistency is critical if this particular report (to the Board) is the only conduct found to plausibly fall outside the scope of Plaintiff Fogler's official duties. However, because Plaintiffs' Response to Defendants' Motion to Dismiss appears to allege that both Plaintiffs' made such a report, and because other reports could plausibly fall outside of Plaintiffs' official duties, the Court need not dwell on the ramifications of this pleading anomaly.

In *Garcetti,* the Supreme Court left unclear the boundaries between speech made pursuant to official duty and speech made as a citizen. *Id.* at 424. The Seventh Circuit, however, has clarified that "determining what falls within the scope of an employee's duties is a practical exercise that focuses on the duties an employee is actually expected to perform."[2] *Renken v. Gregory*, 541 F.3d 769, 773 (7th Cir. 2008) (internal quotations omitted). For example, in *Morales v. Jones*, the Seventh Circuit Court of Appeals found that statements made by a police officer in a civil deposition were not made pursuant to his official duties and thus, *Garcetti* was not implicated, but reports he made to colleagues and to an Assistant DA were covered by *Garcetti*. 494 F.3d 590, 598 (7th Cir. 2007).

In light of the above guidance, the Court believes it is reasonable to infer from the facts alleged that at least some of Plaintiffs' reports may have fallen outside of Plaintiffs' official duties. The particular fact that makes this most plausible is Plaintiffs' alleged reports to the Village Board of Sandoval (*see* Doc. 36, p. 1). Police officers have a general duty to preserve the well-being of the community at large, *see, e.g.*, *Marvin v. Chicago Transit Authority*, 446 N.E.2d 1183, 1186 (Ill. App. Ct. 1983); ostensibly, this encompasses an additional duty to report or investigate potential misconduct. However, the present case is less clear because some of the reports of the alleged mayoral misconduct were made to individuals outside of Plaintiffs' normal chain of command. Generally speaking, "federal courts have been more likely to conclude that an employee was

---

[2] The contours of where official duties end and private citizenry begins are still being fleshed out. Official duties, however, should not be defined too narrowly nor too broadly. *Trigillo v. Snyder,* 547 F.3d 826, 829 (7th Cir. 2008), *citing Garcetti,* 547 U.S. at 424-425. Further, "a statute or regulation can help determine the scope of an employee's duties to the extent that it creates responsibilities for that employee's specific job. *Id.* With that said, "a public employee's more general responsibilities are not beyond the scope of official duties for First Amendment purposes." *Vose v. Kliment*, 506 F.3d 565, 571 (7th Cir. 2007). In sum, *Garcetti* mandates "a practical inquiry into whether an employee's expression was made pursuant to her official obligations, including both her day-to-day duties and her more general responsibilities." *Trigillo*, 547 F.3d at 829.

speaking as a citizen when the employee was addressing an audience outside his employer." *Anderson v. Wisconsin Dept. of Health and Family Services*, No. 08-cv-82-slc, 2009 WL 196736 at *7 (W.D. Wis. Jan. 26, 2009), *citing Morales v. Jones*, 494 F.3d 590, 598 (7th Cir. 2007). While this general principle is not a hard and fast rule, in this case, it is enough for Plaintiffs' to survive Defendants' Rule 12(b)(6) motion, but only by the very slimmest of margins.

Finally, for qualified immunity purposes, the First Amendment rights implicated in this case are both intertwined with and secondary to the Court's *Garcetti* analysis above. First, as this Court has previously stated, the sequence of determining the two-step qualified immunity analysis is left to the judge's discretion based on the particular circumstances of the case at hand. *Pearson v. Callahan,* 129 S.Ct. 808 (2009). Thus, if the Court starts by determining whether Plaintiffs' were deprived of a constitutional right, (formerly the "first-prong" under the old qualified immunity regime), this would require antecedent resolution of the *Garcetti* issues outlined above. *See Chalkos v. Stevens*, 560 F.3d 705, 711-712 (7th Cir. 2000). That is, if Plaintiffs were speaking only pursuant to official duties, then no constitutional rights are implicated and Plaintiffs' federal case is over. *Id.* However, if Plaintiffs were indeed speaking as citizens, then First Amendment protection would apply, and the Court would consider whether they were deprived of this right for qualified immunity purposes.

If, on the other hand, the Court begins by determining whether the particular constitutional right was "clearly established" at the time of the alleged violation, the analysis hinges on exactly what rights are implicated and how clearly they are defined. In other words, once again, resolution would turn on *Garcetti* and whether any right is implicated in the first place. It goes without saying that a nonexistent right cannot be clearly established.

If, however, a right to speak as citizens is implicated here, then the relevant question is whether it should have been "sufficiently clear" to Defendants that they could not terminate Plaintiffs' employment without violating the Constitution. *Chalkos*, 560 F.3d 705 at 716. That is, would a "reasonable official" understand that what he is doing violates a constitutional right? *Id*. To meet this standard, there doesn't have to be a case "'on all fours' with the current claim." *Id*. Nevertheless, analogous cases can be helpful in establishing a right to be free from the specific conduct at issue. *Gonzalez v. City of Elgin*, 578 F.3d 526 (7th Cir. 2009). Moreover, "officials can still be on notice . . . even in novel factual circumstances." *Chalkos*, 560 F.3d 705 at 716, *quoting Hope v. Pelzer*, 536 U.S. 730, 741 (2002). At bottom, the judge determines the currently applicable law and whether such law was clearly established at the time the action occurred. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Here, based on the facts alleged, it appears plausible that Plaintiffs may have been terminated as a direct response to their reports of mayoral misconduct. "It is well established by the Supreme Court and this circuit that a public employer may not retaliate against an employee who exercises his First Amendment speech rights." *Miller v. Jones*, 444 F.3d 929, 939 (7th Cir. 2006). Thus, Defendants may have been on notice simply based on this "general statement of the law." *Hope*, 536 U.S. at 740.

In sum, the Court only makes the limited and narrow determination that a sufficient factual basis exists to make it plausible that Plaintiffs made some of their reports as citizens. In turn, it follows that it is also plausible that Plaintiffs' employment may have been terminated in violation of clearly established constitutional rights guaranteed by the First Amendment. However, the ultimate resolution of these issues is far from clear.

### Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Doc. 31) is **DENIED**.

**IT IS SO ORDERED.**

DATED: 11/03/09

                                           s/ *G. Patrick Murphy*
                                           G. PATRICK MURPHY
                                           United States District Judge