IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TREVOR JAMES FULK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL NO. 08–843–GPM |
| | ) |
| VILLAGE OF SANDOVAL, ILLINOIS, and | ) |
| JEROME RATTERMANN, Individually, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter came before the Court on February 22, 2010, for a hearing on Defendants' Motion for Summary Judgment (Doc. 47), and on Plaintiff Trevor James Fulk's (Fulk) voluntary Stipulation of Dismissal (Doc. 53). Fulk, a former police officer for the Village of Sandoval, Illinois (Village), filed claims against the Village for: (1) common law retaliation; (2) retaliation in violation of his First Amendment rights under 42 U.S.C. § 1983; and (3) violating the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.*, for allegedly terminating Fulk's employment in response to his reports of misconduct by the Defendant, then Mayor and Village Board President, Jerome Ratermann (Mayor). Fulk also filed claims under 42 U.S.C. § 1983 against the Mayor and the members of the Village Board of Trustees, both in their official capacities and individually.[1]

At the hearing, the Court granted Fulk's voluntary Stipulation of Dismissal, thereby

---

[1] In an earlier Order, the Court dismissed all of Fulk's official capacity claims against the Mayor and the members of the Board of Trustees as duplicative of the claims against the Village (*see* Doc. 28).

dismissing, with prejudice, all of Fulk's claims against the individual Village Board members: Defendant's Mark Copple, Gerald Fanger, Cora Oehmke, Bill Thompson and Ray Resch. Further, at the hearing and on the record, the Court granted summary judgment, in part, as to the Village of Sandoval because Fulk failed to show a genuine issue of material fact regarding any "permanent and well-settled municipal custom or practice that … was the moving force behind the plaintiff's constitutional injury." *Valentino v. Village of S. Chicago Heights*, 575 F.3d 664, 674 (7th Cir. 2009), *citing Monell v. City of New York*, 436 U.S. 658, 690 (1978). As such, only Fulk's First Amendment retaliation claim under 42 U.S.C. § 1983 against the Mayor, individually, remains for disposition.

## BACKGROUND

On summary judgment, the Court considers the facts in a light most favorable to the non-moving party and adopts reasonable inferences and resolves doubts in favor of that party. *Nat'l Athletic Sportswear, Inc., v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008). In September 2007, Fulk was hired as a part-time police officer for the Village. During his brief tenure, Fulk allegedly either witnessed, or became aware of, inappropriate conduct by the Mayor, including: accessing juvenile records for no apparent official purpose, searching through and handling items in the evidence locker, making a fraudulent police commission card for himself and destroying, or ordering the destruction of various official documents. In mid-to-late November 2007, Fulk reported some of this conduct to an Illinois Assistant State Attorney (State's Attorney), the Illinois State Police Integrity Unit (ISP), the Marion County Sheriff and certian members of the Village Board of Trustees (Doc. 48, Ex. 3, pp. 52-54, 61). Then, on December 1, 2007, Fulk was told he was "laid off" or terminated from his employment with the Village of Sandoval.

Initially, Fulk was told he was being terminated for sitting in on a Village Board meeting (Doc. 48, Ex. 3, p. 35, line 5). However, the Mayor later claimed Fulk was fired because of numerous complaints made against Fulk. At his deposition, the Mayor first cited one incident involving the manager of a Casey's General Store who claimed that Fulk was pressuring her into pressing charges. The Mayor then testified that Fulk allegedly went outside of Sandoval in a patrol car to eat at a restaurant and, at another time, had run into a tavern, causing damage to a patrol car. Further, the Mayor alleged that "all the officers couldn't get along with [Fulk]" (Doc. 48, Ex. 5, p. 39, line 12). However, no written complaints were ever filed, and the Mayor claims that he took no notes or other disciplinary actions regarding any of the alleged incidents involving Fulk. Finally, the Mayor testified that the Village Board's Police Committee, comprised of himself and two other Board members, made the decision to let Fulk go (Doc. 48, Ex. 5, p. 19, lines 14-21). However, the two other Police Committee members testified that the Mayor, acting alone, made the decision to fire Fulk. Indeed, the Mayor now admits that "it is undisputed that Fulk was fired by [the Mayor], not a vote of the Board" (Doc. 48, p. 3).

The Mayor moves for summary judgment alleging: (1) he had no knowledge of Fulk's reports to any outside state agencies or members of the Village Board and, as such, he could not have fired Fulk in retaliation; (2) Fulk's conduct is not protected by the First Amendment because he made his complaints pursuant to his official duties; (3) the allegations that Fulk reported "are not of sufficiently public concern to trigger a First Amendment claim" (Doc. 48, p. 7); and (4) Fulk was fired for non-discriminatory reasons — namely, he "was not a good police officer" — and Fulk cannot prove that these reasons were merely a pretext (*Id.* at 8).

## ANALYSIS

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial.… A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted).

To establish a prima facie claim for a retaliatory violation of First Amendment rights, public employees must present sufficient evidence that: (1) their speech (or conduct) was constitutionally protected; (2) they suffered a deprivation likely to deter them from exercising First Amendment rights; and (3) their speech was a motivating factor in their employer's adverse action. *Valentino*, 575 F.3d 664 at 670; *see also Gunville v. Walker*, 583 F.3d 979, 983-84 (7th Cir. 2009).[2] Then,

> [i]f a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that it would have taken the same action in the absence of the protected speech. If the employer carries this burden, the plaintiff may still reach trial by producing sufficient evidence … that the

---

[2] In *Gross v. FBL Financial Servs., Inc.*, 129 S.Ct. 2343 (2009), which involved an Age Discrimination in Employment Act (ADEA) claim, the Supreme Court required "but-for" causation for the mixed-motive jury instructions at issue. However, in *Fairley v. Andrews*, a case involving 42 U.S.C. § 1983, the Seventh Circuit Court of Appeals reviewed a grant of summary judgment and found, "the record has evidence from which a reasonable jury could find causation; no more is necessary at this stage, but the instructions at trial must reflect the holding of *Gross*." 578 F.3d 518, 525-26 (7th Cir. 2009). Thus, it appears that the motivating or substantial factor test survives *Gross* and is sufficient to withstand summary judgment, but a jury must find "but for" causation for a plaintiff to establish her prima facie case.

>employer's reasons were merely a pretext for firing the employee, at least in part, for exercising her First Amendment rights.

*Valentino*, 575 F.3d 664 at 670.

Here, there is no dispute that the Mayor, in firing Fulk, caused him to suffer an adverse action likely to deter his First Amendment freedoms. *See Id.* at 671. As such, in deciding whether Fulk has established a prima facie case of retaliation, the only issues to be resolved are (1) whether Fulk engaged in constitutionally protected speech, and (2) whether a reasonable trier of fact could find that Fulk's speech was at least a motivating factor behind his termination.

Regarding the first question, Fulk claims the Mayor retaliated against him because he reported the Mayor's alleged misconduct to the State's Attorney, ISP, County Sheriff and certain Village Board members. A public employer cannot retaliate against an employee for exercising his First Amendment rights. *Miller v. Jones*, 444 F.3d 929 (7th Cir. 2006). That said, when "public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Thus, the determination of whether Fulk engaged in constitutionally protected speech hinges on whether Fulk — when reporting the Mayor's alleged misconduct to various entities and individuals — was speaking as a citizen on a matter of public concern. *Renken v. Gregory*, 541 F.3d 769, 773 (7th Cir. 2008).

In its earlier Order on Defendant's Motion to Dismiss, the Court analyzed some of the distinctions between speech made pursuant to official duties and that made as a private citizen (*see* Doc. 45). The location, audience and subject matter of the employee's speech are *not* dispositive because speech may be protected even if it relates to the speaker's job and "is made by an employee at his place of work to his coworkers." *Callahan v. Fermon*, 526 F.3d 1040, 1044 (7th Cir. 2008),

*citing Garcetti*, 547 U.S. at 421, 424-25. At bottom, this mixed question of fact and law requires a practical inquiry of the whole record, in light of the controlling factor — "whether the speech 'owes its existence to a public employee's professional responsibilities.'" *Callahan v. Fermon*, 526 F.3d 1040, 1044 (7th Cir. 2008), *quoting Garcetti*, 547 U.S. at 421, 424.[3] Here, the resolution of this inquiry — at least on summary judgment — is an incredibly close call.

The Mayor argues that Fulk has not met his burden to show that he was *not* speaking pursuant to his official duties and thus, *Garcetti* bars his claim. More specifically, the Mayor claims that Fulk learned of the alleged misconduct during the course of his employment and "was simply doing the job for which he was hired" (Doc. 48, p. 6). In support, the Mayor cites an Illinois Appellate Court case finding that because a police officer is "always obligated to attempt to prevent the commission of crime in his presence, any action taken by him toward that end, even in his official off-duty hours, falls within the performance of his duties as a police officer." *Banks v. Chicago*, 297 N.E.2d 343, 349 (Ill.App.Ct. 1973). However, this same case noted that "being considered 'on duty' at all hours of the day or night does not result in all of his acts being deemed to have been taken in the performance of his duties as a police officer." *Id.* (citation omitted). Therefore, this case is not dispositive of whether Fulk made his reports pursuant to his official duties.

---

[3] The Supreme Court, in addressing the distinction between questions of fact and questions of law, has found that "application of … ordinary principles of logic and common experience … are ordinarily entrusted to the finder of fact." *Bose Corp. v. Consumers Union*, 466 U.S. 485, 501 (1984). In the context of First Amendment Retaliation cases, the Third Circuit has "held that 'whether a particular incident of speech is made within a particular plaintiff's job duties is a mixed question of fact and law.'" *Reilly v. City of Atlantic City*, 532 F.3d 216, 227 (3d Cir. 2008), *quoting Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007). The Seventh Circuit implicitly agreed with the Third Circuit by concluding in *Davis v. Cook County*, 534 F.3d 650 (7th Cir. 2008), that summary judgment was appropriate because "no rational *trier of fact* could find" that Davis's speech had been made as a private citizen. *Id*. at 653 (emphasis added). Thus, the scope and content of a plaintiff's job responsibilities can and should be found by a trier of fact through application of these principles. *See Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1129 (9th Cir. 2008).

Two cases are instructive in fleshing out the contours of the official duty analysis. In *Callahan v. Fermon*, the Seventh Circuit Court of Appeals concluded that the plaintiff, an Officer with the Illinois State Police (ISP), was speaking pursuant to his official duties when he spoke at a ISP Academy meeting that he was ordered by his superiors to attend. *Callahan*, 526 F.3d at 1045. The *Callahan* Court also concluded that the plaintiff spoke pursuant to his official duties when he twice complained to the ISP Department of Internal Investigation about perceived misconduct by two of his superior officers. *Id*. The *Callahan* Court reached these conclusions "because [the plaintiff's] statements were required by his actual duties as a lieutenant in the ISP." *Id.*, *citing Spiegla v. Hull*, 481 F.3d 961 (7th Cir. 2007). In another case, *Morales v. Jones*, the same Court found that testimony given by a police officer at a civil deposition was not made pursuant to his official duties and thus, *Garcetti* was not implicated. *Morales v. Jones*, 494 F.3d 590, 598 (7th Cir. 2007). However, reports that the officer plaintiff in *Morales* made to colleagues and to an Assistant District Attorney were covered by *Garcetti*. *Id.*

Here, unlike the ISP Officer plaintiff in *Callahan* whose speech occurred at an official meeting of the ISP, Fulk claims he was "off duty" and on his own time when he reported the Mayor's misconduct to the County Sheriff, ISP and State's Attorney. Further, unlike the *Callahan* plaintiff who was required by the ISP rules of conduct to report misconduct of fellow employees to the Department of Internal Investigation, Fulk made at least some of his reports outside of his normal chain of command — to members of the Village Board, at least one of whom did not sit on the Village's Police Committee, and to the State's Attorney. Finally, it is possible — like the police officer in *Morales* — that some of Fulk's reports were made within his official duties and others were not. In light of *Garcetti* and its progeny, these reports by Fulk fall into a grey area where the exact contours of what qualifies as speech made pursuant to official duties is far from clear.

Nevertheless, Plaintiff has put forth sufficient evidence to create a genuine issue of material fact as to whether at least some of his reports were made as a citizen and thus, constitutionally protected.

Thankfully, resolving whether any of Fulk's reports involved a "matter of public concern," appears to be more straight forward.

> Whether a statement rises to the level of public concern is a question of law, and in answering this question we look to the "content, form, and context" of the statement. *Connick v. Myers*, 461 U.S. 138, 147-48, 148 n. 7 (1983). Then we balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Schad v. Jones*, 415 F.3d 671, 674 (7th Cir. 2005)(quoting *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968)).

*Valentino*, 575 F.3d at 671. In other words, "speech that addresses a private or personal interest, as opposed to a community one, does not satisfy the standards for First Amendment protection." *Id.* (quotation omitted).

Generally, "it is by now well-established that protesting government waste addresses a matter of public concern and is therefore entitled to constitutional protection." *Id.* at 671-72 (collecting cases). The Seventh Circuit Court of Appeals has found that the ethical and legal operation of government by public officials is a "quintessential issue of public concern." *Brooks v. Univ. of Wis. Bd. of Regents*, 406 F.3d 476, 485 (7th Cir. 2005), *quoting Greer v. Amesqua*, 212 F.3d 358, 371 (7th Cir. 2000). Moreover, "an employee's ability to highlight the misuse … of public trust is a critical weapon in the fight against government corruption and inefficiency." *Wainscott v. Henry*, 315 F.3d 844, 849 (7th Cir. 2003). While the motive of the speaker is considered as part of the "context" in which the speech was made, "speech of public importance is only transformed into a matter of private concern when it is motivated *solely* by the speaker's personal interests." *Valentino*, 575 F.3d at 672, *quoting Gazarkiewicz v. Town of Kingsford Heights, Ind.*, 359 F.3d 933, 942 (7th

Cir. 2004).

Here, the Mayor argues that none of the reports regarding his alleged misconduct rises to the level of public concern. The Court strongly disagrees. If any of Fulk's allegations are indeed true, the Mayor may have tampered with evidence, improperly accessed juvenile records, impersonated a police officer and destroyed documents from pending litigation in which he was involved. This is exactly the kind of unethical and corrupt conduct by a public employee that the Seventh Circuit has called a "quintessential matter of public concern." *Greer*, 212 F.3d at 371. Further, neither Fulk nor the Mayor alleges that the speech at issue arose out of a personal dispute or was motivated by Fulk's personal interests alone. Finally, the Mayor makes no argument that any efficiency concerns outweighed the issues of public concern raised by Fulk. As such, Fulk has adequately demonstrated that he engaged in constitutionally protected speech.

The final issue to be resolved is the causation inquiry; that is, whether Fulk's protected speech was a factor that motivated the Mayor to terminate his employment with the Village. To establish causation, a plaintiff must show — by sufficient direct or circumstantial evidence — the defendant (1) was aware of the plaintiff's protected conduct and (2) the plaintiff's speech was at least a motivating factor in the defendant's conduct (*see supra*, n.2). *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992).

The Mayor argues that he was not aware of Fulk's reports to the State agencies and other Board members until after Fulk was terminated (Doc. 48, p. 3). Indeed, Fulk provides no direct evidence to the contrary. Fulk, however, claims that his co-worker and former Plaintiff, Officer Sam Fogler, had spoken with Board Member Cora Oehmke a number of times and that Ms. Oehmke told Fogler that the Mayor knew about their reports to the State's Attorney and the sheriff's department. (Doc. 54, p. 4). Officer Fogler also testified that he told a Board Member, Mark Copple (the

Mayor's next-door neighbor), about the Mayor's misconduct on November 16, 2007, and he spoke with another Board member, Ray Resch, regarding the same topic near the beginning of November 2007 (Doc. 54, pp. 4-5).  Furthermore, while timing alone is usually insufficient to create a triable issue, here the timing is suspicious in that Fulk was terminated shortly after reporting the Mayor's alleged misconduct.  *See Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006); *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).  Thus, when taken as a whole, Fulk has put forth enough circumstantial evidence by which a jury reasonably might infer that the Mayor of this tight-knit, small town, knew about Fulk's reports to State agencies and other Board members.

As such, Fulk has provided sufficient evidence to make out a prima facie case of retaliation by the Mayor in violation of his First Amendment rights.  The burden therefore shifts to the Mayor "to prove by a preponderance of the evidence that the same actions would have occurred in the absence of the protected conduct." *Spiegla*, 371 F.3d at 943 (citation omitted).  "Often, the same evidence used to establish a prima facie case is sufficient to allow a jury to determine that a defendant's stated reason for terminating a plaintiff was a mere front for an ulterior, unlawful motive." *Valentino*, 575 F.3d at 673.

The Mayor alleges that he has shown "a legitimate non-discriminatory basis" for his decision to terminate Officer Fulk's employment; namely, that Fulk was fired due to "numerous complaints" including insubordination, failing to report damage to a patrol vehicle and taking a patrol vehicle to eat at an out-of-town restaurant. (Doc. 48, p. 9).  The Mayor therefore claims that he has met his burden by demonstrating that Fulk would have been terminated regardless of his protected First Amendment activities.

Fulk responds that the lack of any complaints, notes, records or other disciplinary measures suggests that the Mayor's alleged reasons for terminating Fulk were merely a pretext (*see* Doc. 54,

pp. 7-8). Fulk also claims that the reasons he was given for being let go changed over time. Finally, Fulk alleges that the Mayor's testimony that, "all the officers couldn't get along with him" was exactly the same allegation the Mayor made against another police officer in a prior lawsuit which the Village settled. In that case, at least two other officers came forward claiming the Mayor's testimony was untrue (Doc. 54, p. 8). Therefore, once again, Fulk has provided sufficient circumstantial evidence that the Mayor's proffered reasons for firing him were a mere pretext.

## CONCLUSION

In sum, the Plaintiff, Trevor Fulk has put forth enough evidence for his First Amendment retaliation claim under 42 U.S.C. § 1983 against the Mayor, individually, to withstand summary judgment. For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 47) is **GRANTED, in part**, as to the Defendant Village of Sandoval (as the Court earlier ruled, *see* Doc. 59), and **DENIED, in part,** as to the Defendant Mayor Jerome Rattermann.

**IT IS SO ORDERED.**

DATED: 03/19/10

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge