IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TREVOR JAMES FULK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CIVIL NO. 08–843–GPM |
| | ) |
| **VILLAGE OF SANDOVAL, ILLINOIS, and** | ) |
| **JEROME RATERMANN, Individually,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

      This Order is intended to clarify and supplement the Court's earlier Order (Doc. 64) regarding Defendants' Motion for Summary Judgment (Doc. 47). Plaintiff Trevor Fulk (Fulk) promptly filed a Motion for Reconsideration (Doc. 65) of the Court's earlier Order, arguing the Court incorrectly dismissed his common law retaliatory discharge claim (Doc. 29, Count I) and his statutory Whistleblower Act claim (*Id.*, Count V) against the Defendant Village of Sandoval (Village). The Court agrees that Plaintiff's common law retaliatory discharge claim against the Village was prematurely dismissed. However, regarding Fulk's statutory claim, the Court agrees with the Village that the Illinois Whistleblower Act did not provide any protection for Fulk when he was terminated from his employment late in 2007. *See* 740 ILCS 174/5. As such, for the reasons outlined below, summary judgment on Fulk's common law retaliatory discharge claim is **DENIED**. Summary judgment on Fulk's statutory claim under the Illinois Whistleblower Act, however, is appropriate and is hereby **GRANTED**.

Defendant, Mayor Jerome Ratermann (Mayor), also filed a Motion to Reconsider (Doc. 68) the Mayor's argument that he is entitled to summary judgment based on his qualified immunity claim. While the issue is close, for the reasons outlined below, the Mayor's motion is **DENIED**.

## ANALYSIS

An employee can state a valid retaliatory discharge claim under Illinois' common law if he alleges he was discharged from his employment in retaliation for certain activities and "that the discharge violated the clear mandate of public policy." *Callahan v. Edgewater Care & Rehab. Center, Inc.* 872 N.E.2d 551, 552-53 (Ill.App.Ct. 2007), *citing Barr v. Kelso-Burnett Co.*, 478 N.E.2d 1354 (Ill. 1985). This tort has evolved to "afford relief to employees discharged for reporting criminal activity to law-enforcement authorities." *Callahan*, 872 N.E.2d at 552, *citing Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876 (Ill. 1981). Regarding causation, "[t]he element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *Hartlein v. Ill. Pwr. Co.*, 601 N.E.2d 720, 728 (Ill. 1992). In other words, in the causation context, "the ultimate issue to be decided is the employer's motive in discharging the employee." *Id*. at 730.

Here, Fulk has put forth sufficient evidence to withstand summary judgment on his common law retaliatory discharge claim. Fulk alleges he was terminated because he reported Defendant, Mayor Ratermann's (Mayor) alleged misconduct to the Illinois State Police (ISP), an Assistant Illinois State Attorney (State's Attorney), the Marion County Sheriff, and various members of the Village Board. "In *Palmateer*, the court indicated that public policy favored citizen-crime fighters in exposing crime." *Prince v. Rescorp Realty*, 940 F.2d 1104, 1110 (7th Cir. 1991), *citing Palmateer*, 421 N.E.2d at 879. Moreover, for the same reasoning that the Court applied in its earlier

summary judgment Order (Doc. 64), Fulk has established a genuine fact question regarding whether the Mayor's various reasons for his termination were a valid basis for his discharge or merely a pretext (*See* Doc. 64, pp. 10-11). As such, summary judgment is not appropriate for this claim.

The same, however, can not be said for Fulk's claim under the Illinois Whistleblower Act. 740 ILCS 174/1, *et seq.* (IWA). Prior to being amended on January 1, 2008, the IWA's definition of employer did not include "any governmental entity." 740 ILCS 174/5. Fulk attempts to argue that he was merely "laid off" in late November or Early December 2007, but he was not officially "terminated" until sometime in 2008. This appears to be a semantical argument that is not genuinely supported by the facts. Specifically, Defendants' note that Fulk "submitted a letter regarding his 'termination' to the Village Board and came to the Village Board to discuss his 'termination'" (Doc. 48, p. 2 and Ex. C). Fulk counters that the Mayor initially told him he was terminated "and then later retreated and used the language that [he] was laid off" (Doc. 48, Ex. B). Whatever term was actually used, the Court believes that Fulk's employment ended in 2007. As such, the Court finds Fulk's post hoc rationalizations — for example, that he thought he might be subject to recall and that he did not apply for unemployment benefits until February 2008 — unavailing.

Fulk makes a separate argument that the IWA, as amended, applied to him because early in 2008, the Village Board sent him a letter demanding he return his badge and later the Village refused to rehire him after he had reapplied for his old position (Doc. 54, pp 15-16). Fulk argues that either returning his badge or the Village's refusal to rehire him qualify as an "act or omission [that] would be materially adverse to a reasonable employee," and he is therefore covered by the direct language of the IWA. 740 ILCS 174/20.1 and § 30. While this argument has some appeal, it quickly breaks down because (1) Fulk has not provided the Court with any caselaw supporting his proposition that

the IWA should apply to post-termination actions, and (2) at the time these actions occurred, the Village was no longer his employer. *See* 740 ILCS 174/ 30 ("If an employer takes any action against an employee … the employee may bring a civil action against the employer"). As such, the IWA, by its express language, did not apply to Fulk. Thus, while Fulk makes a novel attempt to expand the IWA's protective reach, he has not put forth sufficient evidence to create a genuine fact issue regarding the IWA's applicability to any of the events surrounding his termination.[1]

Finally, the Mayor requests that the Court reconsider his qualified immunity arguments because the Court's Order admitted that "the exact contours of what qualifies as speech made pursuant to official duties is far from clear" (Doc. 64, p. 7). On summary judgment, the Court makes two key inquiries in evaluating qualified immunity: "(1) whether the facts, taken in the light most favorable to the plaintiff[], show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). "[T]he court may decide these questions in whatever order is best suited to the case at hand." *Id*., *citing Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Further, in some circumstances, the analysis of whether there is a genuine issue of material fact and the analysis of whether the defendant is entitled to qualified immunity effectively collapses into one inquiry. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002).

---

[1] Another prudential consideration counsels in favor of the Court denying Fulk's IWA claim. Namely, a federal court must apply state law as pronounced by the state's highest court in deciding state-law claims brought in the federal court's supplemental jurisdiction. *Timmerman v. Modern Indus., Inc*., 960 F.2d 692, 696 (7th Cir. 1992); *see also Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 681 (7th Cir. 1986) (same). Fulk has not submitted, and the Court cannot find, that any Illinois Court agrees with Fulk's efforts to expand the IWA's coverage. Indeed, a "federal court is not the place to press innovative theories of state law," *Anderson v. Marathon Petro. Co.*, 801 F.2d 936, 942 (7th Cir. 1986), because federal courts have "limited discretion … with respect to untested legal theories brought under the rubric of state law." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007).

As the Court explained in its earlier Order, Fulk has put forth sufficient evidence, when taken in a light most favorable to him, to show that Defendants may have violated his First Amendment rights when he was terminated shortly after reporting alleged misconduct by the Mayor to state agencies and certain Village Board members (*See* Doc. 64, pp. 7-8.). That is sufficient to defeat Defendants' claim of qualified immunity — at least regarding the first prong noted above.

Whether Fulk's constitutional right was clearly established at the time of the alleged violation is, admittedly, a closer issue. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)(internal quotation omitted). Further, the qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). However, "to meet this standard, there doesn't have to be a case "'on all fours' with the current claim." *Chalkos v. Stevens*, 560 F.3d 705, 716 (7th Cir. 2000). Moreover, "officials can still be on notice . . . even in novel factual circumstances." *Id.*, quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Finally, in some cases, where the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial. *Gonzalez v. City of Elgin*, 578 F.3d 526 (7th Cir. 2009).

Here, the resolution of the narrow mixed legal and fact-based *Garcetti* issue — namely, which of Fulk's reports qualify as speech made pursuant to official duties — depends upon disputed facts that cannot be easily disentangled from the qualified immunity analysis. Based on the facts alleged, Fulk has demonstrated a genuine fact issue regarding whether at least some of his reports of mayoral misconduct may have been made as a citizen speaking on a matter of public concern. In turn, Fulk may have been terminated as a direct response to his reports of mayoral misconduct.

"It is well established by the Supreme Court and this circuit that a public employer may not retaliate against an employee who exercises his First Amendment speech rights." *Miller v. Jones*, 444 F.3d 929, 939 (7th Cir. 2006). Thus, Defendants may have been on notice simply based on this general statement of the law, *Hope*, 536 U.S. at 740-41, and the right to be free from retaliatory conduct for exercising First Amendment rights is sufficiently clear for Fulk to withstand summary judgment on the question of qualified immunity.

## CONCLUSION

In sum, the Plaintiff, Trevor Fulk has put forth enough evidence for his Illinois common law retaliation claim against the Village of Sandoval, to withstand summary judgment. Conversely, Fulk has failed to demonstrate a viable claim under the Illinois Whistleblower Act, as amended on January 1, 2008. Finally, Defendant's claim to qualified immunity is too closely entangled with the material facts that are genuinely in dispute for the Court to grant summary judgment on this issue.

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 47) is **GRANTED, in part**, on Fulk's claims against Defendant Village of Sandoval under both § 1983 (as the Court ruled in its earlier Order, *see* Doc. 64), and the Illinois Whistleblower Act. Summary judgment, however, is **DENIED, in part,** on Fulk's claim under § 1983 against Defendant Mayor Jerome Rattermann (as the Court ruled in its earlier Order, *see* Doc. 64), and on Fulk's claim for Illinois common law retaliatory discharge against Defendant Village of Sandoval. Finally, Defendant's Motion to Reconsider his qualified immunity claims is **DENIED**.

**IT IS SO ORDERED.**

DATED: 03/24/10

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge